IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH McNISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:13-3096-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Joseph McNish ("McNish") seeks judicial review of the Commissioner of Social Security's denial of his applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and supplemental security income ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq.* The Administrative Law Judge ("ALJ") ruled McNish suffered from several severe impairments but retained the residual functional capacity ("RFC") to perform light work with certain restrictions, thus he was not disabled as defined in the Act.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed his application for disability insurance benefits and SSI benefits on December 28, 2009, alleging a disability onset date of June 3, 2009. The Commissioner denied Plaintiff's applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The

ALJ held a hearing and on February 21, 2012, issued his decision holding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on January 23, 2013, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability and SSI benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available "zone of choice," and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the

Commissioner follows a five-step sequential evaluation process.[1]  Plaintiff contends the ALJ erred: (1) by failing to find that his depressive disorder was a severe impairment, and (2) by failing to give controlling weight to the opinion of his treating physician.

**A.     The ALJ did not err in holding Plaintiff's depression was not a severe impairment.**

Plaintiff argues the ALJ erred by finding that his depression was not a severe impairment. This argument lacks merit.

At step two of the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment or combination of impairments that lasted or is expected to last for at least twelve months.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A medically determinable impairment is "severe" if it more than minimally affects the claimant's ability to perform basic work activities.  The impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . and must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms . . ." *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir. 2011).  A medically determinable mental impairment is not severe if it results in no episodes of decompensation and no more than mild

---

[1] The five-step process is as follows:  First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity.  If so, he is not disabled; if not, the inquiry continues.  At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments.  If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled.  At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520.  If so, the applicant is considered disabled; if not, the inquiry continues.  At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work.  If so, the applicant is not disabled; if not, the inquiry continues.  At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work.  20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled.  After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform.  *King*, 564 F.3d at 979 n.2.

3

limitations in the areas of maintaining concentration, persistence and pace; social functioning; and activities of daily living.  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Although severity is not an onerous requirement, it is also not a toothless standard.  *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).  The claimant bears the burden of establishing that his impairment is severe.  *Id.* at 507.

In his decision, the ALJ noted that the record contained evidence that Plaintiff suffered from major depression and a generalized anxiety disorder, but found these impairments, both singly and in combination, did not more than minimally limit Plaintiff's ability to perform basic work.  R. at 14-15.  Specifically, the ALJ analyzed Plaintiff's depression under 20 C.F.R. § 404.1520a and § 416.920a, and found that his mental impairments resulted in only mild limitations in the areas of social functioning, activities of daily living, maintaining concentration, persistence and pace, and that Plaintiff had experienced no episodes of decompensation.  R. at 15.  Thus, his depression did not significantly limit his ability to perform basic work activities and was not severe.  R. at 14-15.

Substantial evidence on the record supports this finding.  As an initial matter, the Court notes Plaintiff did not allege depression as a disabling impairment when he filed his applications for benefits.  R. at 204.  This is significant.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (citing *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993)) ("The fact that she did not allege depression in her application for disability benefits is significant, even if the evidence of depression was later developed.").  Plaintiff also took medication for his depression which he reported "really helped" and made his condition "much better," R. at 90-91, 540, 54, a factor which also weighs against finding his depression was a severe impairment.  *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003).

4

The objective evidence of record also supports the ALJ's finding that Plaintiff's mental impairments imposed no significant limitations on his ability to perform basic work activities. R. at 14-15. As the ALJ noted, mental status examinations revealed that Plaintiff was alert and oriented with appropriate behavior and affect, normal judgment, and normal thought content. R. at 15, 275, 396. With respect to the area of maintaining concentration, persistence, and pace, ample evidence supports a finding that Plaintiff had normal concentration, a normal attention span, and intact recent and remote memory. R. at 414. Plaintiff himself indicated he could read magazines, watch television, work on puzzles, and use the computer. R. at 91, 232, 241. With respect to his social functioning, Plaintiff generally got along with people and maintained friendships. He was also able to interact independently, appropriately, effectively, and on a sustained basis with other individuals. He reported he "[got] along with everyone," talked to his friends once a week, attended church regularly, and attended Masonic meetings. R. at 15, 93-94, 236, 238. With respect to his activities of daily living, Plaintiff indicated that he drove short distances, helped care for the family pets, tended to most of his personal care needs, made things with tools, cooked small meals, helped fold laundry, and shopped. R. at 91-92, 233-235. He even participated in an archery tournament. R. at 540. Thus, the ALJ did not err in holding Plaintiff's depression imposed no significant limitations on his ability to perform basic work activities.

The Court also finds no merit to Plaintiff's alternate argument that the ALJ erred by failing to consider Plaintiff's non-severe impairments in determining his RFC. When the ALJ's opinion is read in its entirety, it is clear that the ALJ considered all of Plaintiff's impairments in assessing Plaintiff's RFC. The ALJ expressly acknowledged that he was required to consider all of Plaintiff's impairments, including non-severe impairments, in determining RFC, R. at 13; the ALJ specifically discussed the evidence of record concerning Plaintiff's depression, R. at 14-15,

5

20; and, as discussed above, the ALJ found that Plaintiff's non-severe mental impairments did not impose any significant work-related limitations. R. at 14-15. Consequently, there is no error.

**B.     The ALJ did not err in giving Dr. Mill's opinion little weight.**

Plaintiff also contends the ALJ erred by giving less weight to the opinion of his treating physician, Dr. Aaron Mills, M.D., who completed three Medical Source Statements on Plaintiff's behalf, and more weight to the opinion of orthopedic surgeon and consultative examiner Dr. Charles Ash, M.D., whose testimony was not as favorable to Plaintiff's application. The Court finds no merit to this argument.

Where, as here, the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). Although a treating physician's opinion concerning an applicant's functional limitations is generally entitled to substantial weight, "[a] treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (internal quotation omitted). The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R § 404.1527(c)(2). An ALJ cannot give controlling weight to the doctor's opinion if it is not supported by medically acceptable laboratory and diagnostic techniques or is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010).

If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002). Once the ALJ has decided how much weight to give a medical opinion, the court's role is limited to reviewing whether

6

substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

Here, the ALJ articulated several good reasons to give less weight to Dr. Mills' opinions. R. at 19-20. To begin, the ALJ noted that Dr. Mill's opinions were inconsistent with each other, and he failed to provide any explanation for the inconsistencies. R. at 19. For example, Dr. Mills completed three medical source statement forms, each of which described different, somewhat contradictory limitations. R. at 457-58, 567-68, 570. As the ALJ noted, Dr. Mills provided no rationale for the discrepancies between his three opinions, and he cited no objective medical examination findings to support these limitations. R. at 19. Dr. Mills appears to have simply checked conflicting boxes on three separate forms without explanation. This is a valid reason to discount his opinion. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding the ALJ properly discounted a physician's opinion because it was conclusory, consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration).

Furthermore, as the ALJ noted, the degree of limitation found by Dr. Mills is inconsistent with the other medical evidence of record. R. at 19. For example, other treatment providers— including Dr. Mills—repeatedly noted that Plaintiff had normal muscle strength, a normal gait, and normal reflexes and coordination. R. at 275, 312, 327, 357, 361, 376, 414, 420-421, 461, 486, 488, 492, 497, 513, 525, 539, 541. Dr. Ash found that despite some limitation in his thoracic and lumbar spine range of motion, Plaintiff moved about satisfactorily and had no difficulty dressing, undressing, arising from a chair, or arising from the examination table. R. at 579. Dr. Ash also found that Plaintiff could lift ten pounds frequently and twenty pounds occasionally, sit for eight hours in an eight-hour workday, stand and walk for six hours in an eight-hour workday. R. at 573-578. Since it is well-settled that an ALJ may discount a treating

7

physician's opinion if it is inconsistent with the medical evidence as a whole, *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007), the ALJ did not err.

Finally, the Court holds the ALJ did not assign too much weight to Dr. Ash's opinion. Dr. Ash conducted a thorough examination of Plaintiff before making his assessment. R. at 19-20, 579-580. As discussed above, the ALJ found that Dr. Ash's assessment was generally consistent with and supported by the other evidence of record. R. at 20, 573-578. Accordingly, the ALJ did not err in weighing Dr. Ash's opinion.

## Conclusion

The Court finds the Commissioner's determination is supported by substantial evidence on the record. The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   January 27, 2014                    /s/ Greg Kays
                                            GREG KAYS, CHIEF JUDGE
                                            UNITED STATES DISTRICT COURT